UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| PATRICIA LANE, Personally and as<br>ADMINISTRATRIX OF THE ESTATE OF<br>JAMES LANE, | ) <br> ) <br> ) <br> ) | Civil No. 12-62-GFVT |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | **MEMORANDUM OPINION**<br>**&**<br>**ORDER** |
| PULASKI COUNTY, KENTUCKY, et al., | ) <br> ) | |
| Defendant. | ) <br> ) | |

**** **** **** ****

When they arrived at the scene, Officers Pevley and Williams could hear the disturbance taking place inside the Lane's residence. After having been told by 911 dispatch that the doors were unlocked, they entered the front door and were confronted by an intoxicated and armed James Lane. Despite repeated warnings, Lane raised his gun and approached the Officers. Pevley fired on Lane and killed him. Plaintiff, Patricia Lane, personally, and as Administratrix of the estate of her deceased husband, James Lane, seeks damages arising from this incident. [R. 1-1.] Presently before the Court is the Motion for Summary Judgment filed by the Defendants, Pulaski County, Danny J. Pevley, Jon Williams, and Todd Wood. [R. 1-1.] For the following reasons, the Defendants' motion will be GRANTED.

**I**

On February 24, 2011, Virginia "Ginger" Matthews (James Lane's sister-in-law) was at the home of James and Patricia Lane, in Wayne County, Ky. That evening, Ms. Matthews called Wayne County 911 and "advised that James Lane was intoxicated and was tearing up the

residence." [R. 23-2 at 2; See generally R. 23-5 (911 Transcript).] Wayne County dispatch requested help from Pulaski County 911 as the Wayne County deputy was unable to respond. [Id.] While Pulaski County Sheriff Deputy Danny Pevley and Sergeant Jon Williams were responding, Ms. Matthews called Wayne County 911 two more times to report that Mr. Lane was intoxicated and had assaulted his wife. [Id. at 2.] She advised the 911 operator that Mr. Lane was armed with a .25 caliber handgun. [Id. at 2; R. 23-5 (911 Tr.).] Ms. Matthews and the Administratrix barricaded themselves in a bedroom of the Lanes' residence. [Id. at 2.] Throughout the course of these calls, the Administratrix took the phone and also demanded officer assistance. Specifically, she told the 911 operator to get the Officers to her house "because we'd done be dead because you can't get somebody here." [R. 23-2; R. 23-5 at 37 (911 Tr).] Later she stated, "I'm going to shoot my husband because they can't get here to protect us." [R. 23-5 at 39 (911 Tr).] In the background, James Lane can be heard belligerently screaming profanities, "Yes, I know, you stupid, MFer" and "GD, you're stupid. If you wasn't Fing trying to hold…That's because you're a bunch of dumb MFers." [R. 23-5 at 38 (911 Tr).]

In his response to the summary judgment motion, the Administratrix suggests that "[James] Lane was alone and barricaded in a room at the residence and therefore was not posing an immediate threat to the officers or to others in the home." [R. 24 at 1.] She further argues that the transcript of the 911 call "shows that the Dispatch officer was notified that Lane was in the back bedroom of the residence by himself and posed no threat to others in the home at the time." [Id.]

When Officers Pevley and Williams arrived at the scene they heard James Lane yelling and banging on doors inside the residence. [R. 23-2 at 13; R. 25 at 2.] Pevley entered the home, "identified himself as a police officer and ordered Lane to drop his gun several times." [R. 25 at

3; R. 23-2 at 15; R. 23-8 (Ky. State Police Report).]  "Lane responded by pointing the gun at Pevley and advancing rapidly toward him."  [R. 25-2 at 2; R. 23-2 at 15.]  Pevley then fired four shots and killed James Lane.  [R. 1-1 at 3; R. 25 at 2; R. 24 at 1.]

On February 23, 2012, Patricia Lane, individually and as Administratrix of the Estate of James Lane, filed suit against Pulaski County, Pulaski County Sheriff Todd Wood, Deputy Pevley and Sergeant Williams in Wayne Circuit Court.  [R. 1.]  The case was removed to this Court on March 27, 2012.  [Id.]  The Administratrix asserts claims arising out of violations of the Fourth and  Fourteenth Amendments of the United States Constitution and the Kentucky Constitution.  She also alleges state law claims for conspiracy, assault and battery and negligence.  [R. 1-1.]  Defendants oppose these claims on substantive grounds and on the basis that they are entitled to various types of immunity, most prominently qualified immunity. [R. 6 at 2.]

## II

## A

When considering the issue of summary judgment, a federal court applies the standards of Fed.R.Civ.P. 56 rather than "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr. Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.* 997 F.2d 150, 165 (6th Cir. 1993).  Under Rule 56, summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).  "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.' "

*Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he

mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477

U.S. at 252.

In deciding a motion for summary judgment, the Court must review the facts and draw all

reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558,

566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). In terms of burden shifting, the

moving party has the initial burden of demonstrating the basis for its motion and identifying

those parts of the record that establish the absence of a genuine issue of material fact. *Chao v.*

*Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by

showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*

*Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must

go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine

issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324.) Moreover, "the

nonmoving party must do more than show there is some metaphysical doubt as to the material

fact. It must present significant probative evidence in support of its opposition to the motion for

summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

Finally, the trial court is under no duty to "search the entire record to establish that it is

bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001)

(citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)). Instead, "the

nonmoving party has an affirmative duty to direct the court's attention to those specific portions

of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*,

260 F.3d at 655.

**B**

Section 1983 does not create substantive rights but, rather, "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States...." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924 (1982); *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir. 1993). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Graham v. Connor,* 490 U.S. 386, 394 (1989) (additional citations omitted)).

As a preliminary matter, Patricia Lane may not recover *personally* under § 1983 for damage done to her husband. "In the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (citing *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984) (additional citations omitted.)) As such, "only the purported victim, or his estate's representative(s), may prosecute a section 1983 claim; conversely, no cause of action may lie under section 1983 for …consequent collateral injuries allegedly suffered personally by the victim's family members." *Claybrook*, 199 F.3d at 357. To the extent that Patricia Lane seeks to recover personally under section 1983 her claims are dismissed.

The Administratrix pleads three violations of the United States Constitution. She alleges her husband's Fourth Amendment rights to be free from unlawful search and seizure were violated when Officers Pevley and Williams entered Lane's home without a warrant and then

used excessive force in shooting Lane. [R. 1-1 at 4.] She also pleads a substantive due process violation of the Fourteenth Amendment on the grounds that lane was deprived his "enjoyment of life." [R. 1-1 at 4.]

**1**

The Administratrix argues that Lane's Fourth Amendment rights were violated when Officers entered Lane's home without a warrant. [R. 1-1 at 3.] Defendants plead qualified immunity as a defense.

When invoked, "the doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In evaluating claims of qualified immunity, Federal Courts generally apply a two-step analysis. First, "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the Court must ask whether the right at issue was "clearly established." *Id.* "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). "The burden of convincing a court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (citation and internal quotation marks omitted). Although at one time courts were required to follow these steps sequentially, the Supreme Court has abandoned that position and now permits courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at

236. Qualified immunity analysis for federal claims is "essentially identical to the qualified immunity inquiry under [Kentucky] state law." *Jefferson Cnty. Fiscal Court v. Peerce*, 132 S.W.3d 824, 837 (Ky. 2004); *see also Yanero v. Davis*, 65 S.W.3d 510, 521-23 (Ky. 2001).

The issue of whether qualified immunity applies is one that should be settled at "the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Significantly, qualified immunity is "an immunity from suit rather than a mere defense to liability… it is effectively lost if a case is erroneously permitted to go to trial." *Pearson,* 555 U.S. at 231 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Because the Defendants have plead qualified immunity as a defense, the Court must first consider if the action "[t]aken in a light most favorable to the party asserting the injury" shows "the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. As the Administratrix claims the police entered her home unlawfully, the starting point for this analysis is the Fourth Amendment to the U.S. Constitution:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. The police did not have a warrant and concede that "warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest" is not constitutional. *Payton v. New York*, 445 U.S. 573, 576 (1980). They argue, however, their entrance was permissible because they had consent and further were justified by exigent circumstances. [R. 23-2 at 22-23.]

Warrantless entry based on consent of a third party is valid when the police reasonably believe that the consenting person possesses authority over the premises. *Illinois v. Rodriguez*,

497 U.S. 177 (1990).  Whether the person consenting actually has authority to consent is ultimately not as important as whether it is reasonable for the Officers to believe that they did have consent at the time of entry.  "Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably."  *Illinois*, 497 U.S. at 177.

In this case, Ms. Matthews had been on the phone with the 911 Operator for an extended period of time.  She reported that she, her husband and the Administratrix were trapped in a bedroom of the residence, unable to escape.  [R. 23-5 at 36  (911 Tr).]  Ms. Matthews not only consented to the officers entering the trailer, but encouraged them to do so.

> Matthews:  You need to tell them to hurry and tell them that the front doors -- that the doors are unlocked.  They can just come in.
>
> 911 Operator:  Okay, ma'am. I'll let them know. Hold on just a second. I'm going to call them, okay?
>
> …
>
> 911 Operator:  You said both doors are unlocked?
>
> Matthews:        Yes. Doors are unlocked to the outside.

[R. 23-2 at 9; R. 23-5 at 34 (911 Tr).]  This information was relayed to the Officers who were on the way to the scene.  The Administratrix also spoke with the 911 dispatch:

> Patricia Lane: Can you get them [the Police] here? Do we need to break out a window?
>
> 911 Operator: They're requesting, do you want them to bust out a window to get out of the house?  I'm trying to --
>
> Patricia Lane: We can't get out. We're trapped. We are trapped.

[R. 23-2 at 12; R. 23-5 at 37-38 (911 Tr).]  These do not sound like the words of a person who was denying consent.

The Officers belief that consent was given by a person with authority is reasonable. Based on the statements made by the Administratrix to the dispatcher and the explicit consent that was given by Ms. Matthews, in the presence of the Administratrix, the facts suggest, even with inferences drawn against the movant, that Patricia Lane actually consented to the entry.  Not once did the Administratrix object to Ms. Matthews instructions to the police.  Rather, the Administratrix got on the phone and suggested, "I'm going to shoot my husband because they [(the Police)] can't get here to protect us."  [Id. at 39.]  The Administratrix' argument that valid consent was not given, in light of the imminent danger which she presented through her own statements to the 911 operator, is unreasonable.  However, even if you accept that the Administratrix did not provide consent, it is unquestionable that the police reasonably believed they had consent from Ms. Matthews to enter the premises.  This is all that is required by *Illinois v. Rodriguez*, 497 U.S. 177 (1990).

As the officers reasonably relied on the consent provided by Ms. Matthews, it is unnecessary to consider whether the actions were further justified by exigent circumstances.  The officers' conduct in entering the Lanes' home, even when considered in the light most favorable to the Plaintiff, was not in violation of a constitutional right.  As such, the Officers are protected by qualified immunity and the claim must be dismissed.

**2**

The Administratrix next argues that the Pevley's use of deadly force against her husband was excessive and constituted an unreasonable seizure.  [R. 1-1 at 4.]  As Pevley has plead qualified immunity, the Court will again consider whether the action "[t]aken in a light most

favorable to the party asserting the injury" shows "the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. Preliminarily, however, it is necessary to consider what constitutes an unreasonable seizure in the context of an excessive force complaint.

The Supreme Court has held that "apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1 (1985). This force may be constitutional, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Garner*, 471 U.S. at 1. In determining whether unreasonable force is used (i.e. whether Lane's constitutional rights were violated) courts balance "the nature and quality of the intrusion on the individual" against "the countervailing governmental interests at stake." *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Importantly, the "underlying intent or motivation of the officer" is not relevant to this analysis, *Id*. (citing *Dunagin v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004)), and the defendant's decision to use force is evaluated "from the perspective of an objective officer." *Id*. (citing *Dunagin*, 390 F.3d at 493). Lane's actions may also be considered when determining reasonableness. *Id*. at 456 (citing *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002); *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988)). Factors such as if the seized party is resisting arrest or if that individual poses a danger to the officer or others have been identified as useful aids, but ultimately, the force used in the seizure should be examined considering the totality of the circumstances. *Id*. at 455. Finally, "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

"The intrusiveness of a seizure by means of deadly force is unmatched." *Garner*, 471 U.S. at 8. For this reason, "[o]nly in rare instances may an officer seize a suspect by use of deadly force." *Sample v. Bailey*, 409 F.3d 689, 698 (6th Cir. 2005) (citing *Whitlow v. City of Louisville*, 39 Fed.Appx. 297, 302-303 (6th Cir. 2002)). However, "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary." *Garner*, 471 U.S. at 1.

As Officer Pevley again pleads qualified immunity, the first question the Court must consider is whether "[t]aken in a light most favorable to the party asserting the injury" it can be shown that "the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. After evaluating the facts presented in relation to the applicable legal standard, it is clear that the Administratrix has produced no evidence to create a genuine issue as to whether Officer Pevley violated Lane's constitutional right against unreasonable seizure.

The pertinent and undisputed facts are as follows. Officers Pevley and Williams responded to a domestic dispute where they had been warned that Lane was brandishing a semi-automatic pistol. [R. 23-2 at 1, 6-8; R. 23-5 (911 tr).] According to Ms. Matthew's report to dispatchers, Lane was intoxicated, had assaulted his wife and was armed. [R. 23-2 at 2, 6; R. 23-5 at 21-23 (911 tr).] Dispatchers had been warned that members of the family were in the house and barricaded in a bedroom away from Lane. [R. 23-2 at 2.] Specifically, Ms. Matthews advised the dispatcher that "[h]e's getting his gun." [R. 23-5 at 39 (911 tr).] The Administratrix, herself, warned "I'm going to shoot my husband because they [(the officers)] can't get here to protect us." [R. 23-5 at 39 (911 tr); R. 23-2 at 2.] Upon arrival, the Officers heard Lane from outside the trailer. [R. 23-2 at 13.] At this point, the Administratrix takes issue with the

Officers' rendition of facts, although has provided no probative evidence to call their recitation into question.

Officer Pevley claims he found Lane with a .25 caliber semi-automatic handgun. [R. 23-2 at 14; R. 23-7.] Pevley announced "Sheriff's Office, put the gun down." [R. 23-2 at 15; R. 23-8]. Lane did not put his weapon down but pointed the gun at Pevley and began moving rapidly towards him. [R. 23-2; R. 23-7]. At this point, Pevley fired four shots and killed Lane. [*Id.*]. The above facts are supported by 911 transcripts, Pevley's responses to the Administratrix' written discovery requests and the Kentucky State Police Report of Investigation. [See R. 23-5; R. 23-7; R. 23-8.]

Based on the above evidence, the Defendants have met their initial burden of identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Furthermore, they have directed the Court's attention to "an absence of evidence" supporting many elements of the Administratrix's case. See *Celotex Corp.*, 477 U.S. at 325. The burden now shifts to the Administratrix to go beyond the pleadings and present specific facts that demonstrate a genuine factual dispute exists about whether Lane's constitutional rights were violated. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Despite the Administratrix' best effort to create a material factual dispute, she has not met this burden.

Defendants point out in their reply that the only citations made in the Administratrixs' response to the motion for summary judgment are to the original complaint. [R. 25 at 1.] For example, the Administratrix suggests that Lane was in the back bedroom of the residence by himself and posed no threat to others in the home at the time. [R. 24.] This, like much of her response, is just a recapitulation of the unsupported allegations in her original complaint. The

law is clear that plaintiffs have "an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d at 655. This duty requires the Administratrix to go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Again, this has not happened.

Defendants argue that whether or not "James Lane pointed his gun at Pevley and began moving towards him rapidly – cannot be affirmatively disputed by Plaintiffs." [R. 23-2 at 27.] In her complaint, the Administratrix claims her husband "did not provoke said defendant or posed any threat to their life or safety." [R. 1-1 at 7.] Furthermore, despite conceding "there was a .25 caliber pistol located in the residence," the Administratrix claims "it was not loaded and was not in the immediate possession of Lane at the time Defendant Pevley shot and killed Lane." [R. 1-1 at 4.] These unsupported claims, however, are not probative evidence for the Court to consider. The reality is that the Administratrix was barricaded behind a bedroom door and does not know what took place in the entry of her house that evening. The Administratrix admits as much in her deposition:

> Q:     And whether your husband pointed a gun at Deputy Pevley, loaded or unloaded, and advanced towards him, you can't say?
>
> A:     I can't say, but he was banging on the walls, so he must have been banging on the wall and jumping towards Pevley all at the same time.
>
> Q:     You can't dispute Deputy Pevley's contentions based on any firsthand knowledge, can you, because you couldn't see?
>
> A:     I couldn't see.

[R. 23-6 at 148 (Testimony of Patricia Lane).] No evidence has been presented or suggestion made that anyone but Pevley can  testify to what actually transpired.

Finally, the Administratrix cites two cases as evidence that excessive force cases are intended to go to a jury.  [R. 24 at 4.]  First, the Administratrix directs the Court to *Sample v. Bailey,* 409 F.3d 689, 697 (6th Cir. 2005).  This case is clearly distinguishable.  Most noticeably, Sample (the Defendant) survived the shooting and was able to present a different version of facts than those presented by the police.  The District Court concluded that this "factual dispute was critical in determining whether Bailey's use of deadly force violated Sample's clearly established constitutional right."  *Id.* at 695.  As has been explained, the Administratrix has presented no such facts.  Furthermore, in affirming the trial court in *Sample*, the Sixth Circuit recognizes there are times when, despite exercising deadly force, the police are entitled to qualified immunity.  *Id.* at 697; See *Boyd v. Baeppler*, 215 F.3d 594 (6th Cir. 2000) (affirming the appropriateness of qualified immunity for officers who used deadly force after a suspect pointed a gun at officers and others); See also *Rhodes v. McDannell*, 945 F.2d 117 (6th Cir. 1991) (affirming application of qualified immunity for officer who used deadly force against man who approached officers with a raised machete in hand despite repeated warnings to drop the machete), *cert. denied,* 502 U.S. 1032 (1992).

Second, the Administratrix looks to *Sigley v. City of Parma Heights*, 437 F3d 527, 535 (6th Cir. 2006), for the proposition that "an officer may not respond with deadly force unless the suspect *willfully* places the officers in imminent harm."  [R. 24 at 5.]  The Administratrix argues that this question of willfulness is a fact question for the jury.  This, however, is a misreading of *Sigley*.  Factually, Sigley was shot in the back and killed by police after a drug deal went bad. *Sigley,* 437 F3d at 531.  Sigley's mother sued the police, who claimed qualified immunity, and the District Court improperly granted summary judgment.  The Sixth Circuit found that summary judgment was improper because material issues of fact existed.  *Id.*  at 536.  For example, there

was conflicting testimony from police about how Sigley was driving the car and where the shooting officer was in relation to that vehicle. *Id. at* 534-537. These disputed facts were supported by evidence and precluded summary judgment on the issue of deadly force. To the extent the Sixth Circuit addressed *willfulness*, the discussion related to whether a police officer's *willful* decision to place himself in a position of danger then justified the use of deadly force. *Id.* at 534-535. The Court reviewed a Seventh Circuit case on the issue where it was held that "the threat of danger must be willful in order to warrant deadly force in response...The police are not justified in using deadly force to stop involuntary action." *Id.* at 535 (citing *Estate of Starks v. Enyart,* 5 F. 3d 230 (7th Cir. 1993). When evaluated in context, this is a much more limited statement than Lane wishes it to be. This was relevant to *Sigley* because there was conflicting testimony about whether he drove his car towards officers or swerved to avoid them. No such dispute exists in this case.

As has been demonstrated, these cases are ultimately unhelpful. By dismissing these claims, the Court does not suggest that excessive force claims are not ever to be resolved by a jury but merely that a genuine dispute of material fact is a pre-requisite for a jury trial. Ultimately, the arguments presented by the Administratrix are nothing more than beliefs aimed at raising some "metaphysical doubt." The summary judgment standard requires more. While the Court must resolve all genuine issues of material fact in favor of the Administratrix, a prerequisite to that favorable treatment is that there be material disputes of fact. In this case, the Administratrix has failed to create such factual disputes. She has not presented probative evidence to rebut the facts put forth by the Government and the Court is under no obligation to accept the unsupported assertions of the Administratrix. Considering the facts presented to the Court, it is clear that only one conclusion is reasonable.

The Court finds that no genuine dispute exists about whether Lane threatened the Officers with a weapon. Furthermore, no genuine dispute exists regarding whether Officers had probable cause to believe that he had committed a crime involving the infliction or threatened infliction of serious physical harm. Even when viewing the evidence in the light most favorable to the Administratrix, no evidence has been presented to show that Pevley violated a constitutional right. For the aforementioned reasons, Pevley is protected by qualified immunity and summary judgment is appropriate.

**3**

The Administratrix also argues that Lane was deprived "of his enjoyment of life" as a result of the Officer's unlawful conduct. [R. 1-1 at 4.] While not entirely clear, it appears that the Administratrix intends to levy this as a substantive due process claim under the Fourteenth Amendment.

The Fourteenth Amendment protects citizens by guaranteeing that the State will not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The clause is "phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Ewolski v. City of Brunswick*, 287 F.3d 492, 509 (6th Cir. 2002) (citing *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 195, (1987)). As such, this clause typically "does not impose liability on the State for injuries inflicted by private acts of violence." *Id.* There are very limited exceptions to this rule. The Administratrix, however, has not argued that any of these exceptions apply. Finally, it is worth noting that "the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are

scarce and open-ended." *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994) (quoting *Collins v. Harker Heights,* 503 U.S. 115, 125 (1992)).

In non-custodial settings, "state officials may violate the Due Process Clause when their affirmative actions directly increase the vulnerability of citizens to danger or otherwise place citizens in harm's way." *Ewolski,* 287 F.3d at 509 (citing *DeShaney,* 489 U.S. at 195). As is pointed out by Defendants, and is clear from the preceding passages, substantive due process claims are normally asserted against the state when the state has created a situation giving rise to private actor violence. [R. 23-2 at 28.] See generally *Ewolski*, 287 F.3d at 509-516. In this context, substantive due process protections are not intended to hold law enforcement accountable for injuries sustained from direct contact between police and a private citizen. Rather, the true vehicle for this claim is the Fourth Amendment. As the Supreme Court explained in *Graham v. Connor*, excessive force claims are properly analyzed under the Fourth Amendment rather than using the standard governing substantive due process. 490 U.S. 386 (1989).

The bottom line is that the factual predicate in this case does not support a Fourteenth Amendment claim. To the extent that the Administratrix seeks to plead this claim, she is trying to place a square peg in a round hole. For the aforementioned reasons, summary judgment is granted on all claims arising under the Fourteenth Amendment.

**4**

**a**

The charges brought against Todd Wood, Pulaski County Sherriff, in his official capacity are functionally equivalent to charges against Pulaski County because "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802,

810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). A plaintiff seeking to "recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* Thus, Pulaski County is the true defendant, and the claims against Woods in his official capacity are dismissed. *See Clark v. Kentucky*, 229 F. Supp. 2d 718, 721-22 (E.D. Ky. 2002) (dismissing official capacity claims).

To the extent that the Administratrix levies claims against Wood in his individual capacity they are also dismissed. Wood pled qualified immunity as an affirmative defense [R. 1-5 at 4] but the Administratrix asserts that "an individual who abdicates the duty to supervise is no longer entitled to claim qualified immunity for his actions." [R. 24 at 5 (citing *Jenkins Indep. Sch. V. Doe*, 379, S.W. 3d 808, 8512 (Ky. App. 2012)).] Supreme Court precedent explains that a government official can only be personally liable if he "caused the deprivation of a right." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Otherwise stated, "[b]ecause § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). Plaintiff has produced no evidence, nor even suggested that Wood had any personal involvement in this incident. Rather, the only complaints levied against Wood relate to his supervision and training. These claims are properly directed at Pulaski County. Accordingly, the Court recognizes that Wood is entitled to qualified immunity for any federal claims brought against him in his individual capacity.

**b**

As noted by Defendants [R. 23-2 at 30], local government entities cannot be liable under § 1983 on a theory of *respondeat superior* liability. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978). Rather, local government entities can only be liable under § 1983 if

"action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.*  To

hold a County liable, the "plaintiff must show: 1) a deprivation of his constitutional or federal

rights: 2) that occurred pursuant to a custom, usage, or official policy of the municipality."

*Taylor v. Adams*, No. 5:11-CV-P164-R, 2011 WL 6415499, at *2 (W.D. Ky. Dec. 21, 2011)

(citing *Monell v. Dep't of Soc. Serv. Of the City of New York*, 436 U.S. 658, 690-91 (1978).

With respect to the second prong, "[section] 1983 liability attaches to a municipality only when

the execution of its 'policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy,' inflicts the injury upon the plaintiff."  *Id.*

(internal citations omitted).  The policy or custom must arise from the "official or officials

responsible for establishing final policy with respect to the subject matter in question."  *Pembaur

v. Cincinnati*, 475 U.S. 469, 483 (1986).

**c**

The Administratrix alleges that "Pulaski County, Kentucky was deliberately indifferent to

its police officers' need for training about interactions with citizens."  [R. 1-1 at 4-5.]  Because

the Court has concluded there was no underlying constitutional violation and because the

Administratrix has not presented any evidence of an inadequacy in Pulaski County's training

program, summary judgment will be granted to Pulaski County.

First, the Administratrix' failure to train claim must fail because this Court has concluded

that there was no underlying constitutional violation.  "If a person has suffered no constitutional

injury at the hands of the individual police officer, the fact that the departmental regulations

might have *authorized* the use of constitutionally excessive force is quite beside the point."  *City

of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  The Sixth Circuit has also endorsed this

position.  See *Whitlow v. City of Louisville*, 39 F. App'x 297, 302 (6th Cir. 2002) ("if Whitlow

suffered no constitutional violation, then Plaintiff's claims against Louisville and Hamilton alleging that their lack of training and failure to supervise the individual officers resulted in Decedent's death, must fail. In other words, Plaintiff's claims against the city are dependent upon the existence of a constitutional violation by its officers."); *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000) ("our conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well.")

Even, however, if the Court found there was an underlying constitutional violation, the Administratrix did not point to a specific inadequacy in the training program and so her claim would still fail. The inadequacy of law enforcement training "only serves as a basis for § 1983 liability 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). In order to prevail on a failure to train claim, a plaintiff must show three things: "that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is closely related to or actually caused the plaintiff's injury." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992) (internal quotations omitted) (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989); *City of Canton*, 489 U.S. at 388)); *see also Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

First, "the court is to examine particular deficiencies in the municipality's training program under the standard addressed above, and not simply 'rubber stamp' a department's training program because it appears lengthy or it appears to cover many topics." *Lee v. Metro. Gov't of Nashville and Davidson Cnty.*, 596 F.Supp.2d 1101, 1124 n.15 (M.D. Tenn. 2009) (citing *City of Canton*, 489 U.S. at 388)); *see also Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d

690, 700 (6th Cir. 2006)). Second, deliberate indifference can be demonstrated two ways. *Id.* at 1124. The first means "is where the city fails to act in response to the repeated complaints of constitutional violations by its officers." *Cherrington v. Skeeter,* 344 F.3d 631, 646 (6th Cir. 2003). The second type is predicated on "a failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction." *Id.* (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)). This scenario springs directly from the Supreme Court's *City of Canton* decision. "In *Canton*, we did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409, (1997) (citing *City of Canton*, 489 U.S. at 390 & n.10). Third, inadequate training is "closely related to" or "actually caused" the ultimate constitutional injury when the following question is answered in the affirmative: "[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *City of Canton*, 489 U.S. at 391.

The Administratrixs' claim fails because she has not directed the Court to any evidence showing that the training program was inadequate. The Administratrix complains in a conclusory fashion that "Pulaski County, Kentucky was deliberately indifferent to its police officers' need for training about interactions with citizens." [R. 1-1 at 5.] She further alleges "[t]he Sheriff and County had duties to provide training and guidelines for police procedures which were to be followed by officers such as Defendants herein. The failure to provide such training and guidelines exposes Defendants to liability." [R. 24 at 7.] No additional support is provided for this proposition. Pulaski County presents no evidence demonstrating its Sheriffs

undergo adequate training but the burden is not on them to do so. Instead, they argue "that there is an absence of evidence to support the non-moving party's case." See *Celotex Corp*., 477 U.S. at 325.

The Administratrix was required to go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). The Supreme Court has held it is not enough "to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Canton*, 489 U.S. at 391. Rather,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.

*Id.* at 390-91 (internal citations omitted). The appropriate measure of the adequacy of a training program is if officers are enabled to "respond properly to the usual and recurring situations with which they must deal." *Id.* at 391. It is the Administratrix's burden to present facts that create a triable issue, *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 566 (6th Cir. 2011), and she has offered no evidence suggesting that Pulaski County deputy sheriffs are inadequately trained in dealing with citizens. All that the Administratrix has presented are her unsupported thoughts and beliefs. The Administratrix' inability to show an inadequacy in the training program precludes her from showing that any alleged constitutional violation "occurred pursuant to a custom, usage, or official policy of the municipality." *Taylor v. Adams*, No. 5:11-CV-P164-R, 2011 WL 6415499, at *2 (W.D. Ky. Dec. 21, 2011) (citing *Monell v. Dep't of Soc. Serv. Of the City of New York*, 436 U.S. 658, 690-91 (1978)).

Even with the facts construed in the light most favorable to her, the Administratrix has not shown that the actions of the Officers constituted a constitutional violation or that Pulaski County's training program was inadequate. To succeed on this claim she was required to prove both. For these reasons, the motion for summary judgment must be granted.

## C

At the beginning of this action, this Court had supplemental jurisdiction to hear the State law claims of civil conspiracy[1], assault and battery and negligence.[2] District Courts may "decline to exercise supplemental jurisdiction over a claim" after "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)3. As the Court has dismissed all claims that present a Federal Question, whether to maintain supplemental jurisdiction over these State claims is discretionary.

In determining whether to "retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.' " *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010) (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). Furthermore, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was

---

[1] The Administratrix pleads a claim for civil conspiracy in her Complaint. [R. 1-1 at 4.] She alleges that "Defendant Williams conspired with Defendant Pevley to stage a cover-up of the crime scene in which to form a perception that Lane had confronted the Defendant's [*sic*] with a loaded gun." [*Id.*] Defendants responded in their Summary Judgment motion with Sixth Circuit case law on Civil Conspiracy. Plaintiff's reply made it clear this claim was under Kentucky law. This tort has been recognized as recently as 2009. (See *Fastenal Co. v. Crawford*, 609 F. Supp. 2d 650, 662 (E.D. Ky. 2009 ("Kentucky law clearly recognizes the tort of civil conspiracy.")) 

[2] The Administratrix also made a fleeting reference to the Kentucky Constitution in her Complaint [R. 1-1 at 4] although she has made no subsequent arguments under that authority. These arguments could also theoretically be made upon remand.

removed." *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.,* 89 F.3d 1244, 1254–1255 (6th Cir.1996)).

With all claims having original federal jurisdiction dismissed, this Court declines to exercise supplemental jurisdiction over the remaining claims. They are, therefore, remanded to state court.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1)     Defendants' Motion for Summary Judgment [R. 23] is **GRANTED** as to all federal claims;

(2)     All remaining state law claims are **REMANDED** to the Wayne Circuit Court from which this action was removed;

(3)     The Court will enter an appropriate judgment contemporaneously herewith; and,

(4)     This matter is **STRICKEN** from the active docket.


This 13th day of March, 2014.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**